1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                       EASTERN DISTRICT OF CALIFORNIA

10
KEVIN E. FIELDS,                    1:09-cv-01406-OWW-GSA-PC
11
                                    FINDINGS AND RECOMMENDATIONS,
12          Plaintiff,              RECOMMENDING THAT THIS ACTION
       v.                           PROCEED ON THE FIRST AMENDED
13                                  COMPLAINT AGAINST DEFENDANTS
JAMES TILTON, et al.,               MASIEL, AGUIRRE, SULLIVAN, DOES 1-4,
14                                  MARTINEZ, BAER, MELO, MENDOZA, DAVIS,
                                    JUNG-HERNANDEZ, ADAME, AND PRICE ON
15          Defendants.             PLAINTIFF'S EIGHTH AMENDMENT CLAIMS,
                                    AND THAT ALL OTHER CLAIMS AND
16                                  DEFENDANTS BE DISMISSED FOR FAILURE
                                    TO STATE A CLAIM
17                                  (Doc. 19.)

18                                  OBJECTIONS, IF ANY, DUE IN 30 DAYS
_____/
19

20  **I.      BACKGROUND**

21          Kevin E. Fields ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis with

22  this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed the Complaint commencing this

23  action on August 3, 2009 in the Sacramento division of the Eastern District of California, and the

24  case was transferred to the Fresno division of the Eastern District of California on August 12, 2009.

25  (Docs. 1, 3.)  The Court screened Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A and entered

26  an order on February 11, 2010, dismissing the Complaint for failure to state a claim, with leave to

27  amend.  (Doc. 16.)  On March 16, 2010, Plaintiff filed the First Amended Complaint, which is now

28  before the Court for screening.  (Doc. 19.)

## II.    SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To state a viable claim for relief, Plaintiff must set forth sufficient factual allegations sufficient to state a plausible claim for relief.  Iqbal, 129 S.Ct. at 1949-50; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The mere possibility of misconduct falls short of meeting this plausibility standard.  Id.

## III.   SUMMARY OF FIRST AMENDED COMPLAINT

Plaintiff is presently incarcerated at Corcoran State Prison ("CSP") in Corcoran, California, where the events at issue in the First Amended Complaint allegedly occurred.  Plaintiff names as defendants James Tilton (Secretary, CDCR), Correctional Officer ("C/O") J. Masiel, C/O A. Aguirre, C/O D. Sullivan, C/O T. Jung-Hernandez, C/O M. Melo, C/O J. M. Velasco, John Doe 1 (ISU Squad C/O), John Does 2, 3, and 4 (3rd Watch C/Os), Sergeant A. Baer, Sergeant J. M. Martinez, Captain B. Davis, Captain B. Flores, D. Price (LVN), Garnett (RN), Raul Lopez (Associate Warden, CSP), Maurice Junious (Chief Deputy Warden, CSP), Derral G. Adams (Warden, CSP), Jennifer Jones

1 | (CCII Appeals Coordinator), C. Lesniak (CCII Appeals Coordinator), C/O Adame, C/O Robles and

2 | Mendoza ("Defendants").  Plaintiff requests monetary damages, declaratory relief, injunctive relief,

3 | and attorney fees and costs.

4 |       Plaintiff alleges as follows.  On September 14, 2007 at 8:30 a.m., Plaintiff was escorted to

5 | the law library by C/O Aguirre and C/O Jung-Hernandez, where he delivered documents to Library

6 | Assistant Guzman to be copied and then was placed in a study cage.  At 11:30 a.m., C/O Aguirre and

7 | C/O J. Masiel approached the study cage and told Plaintiff his time was up.  Plaintiff gathered his

8 | books in a pillowcase, was placed in restraints, and was taken to retrieve his copies.  While Guzman

9 | was talking on the phone, Plaintiff leaned forward and yelled to Guzman that he needed his copies.

10 | Masiel got angry because Plaintiff leaned forward and told Plaintiff to exit the law library.  Plaintiff

11 | objected, arguing that he didn't want to leave without his copies, and Masiel pushed Plaintiff, leaned

12 | towards his face and said, "Nigger, what are you going to do?"  Plaintiff replied to Masiel that if

13 | Masiel put his hands on him again, he would find out what he was going to do. Masiel snatched

14 | Plaintiff's pillowcase out of his hands and pushed Plaintiff in the chest, causing him to stumble

15 | backwards.  Plaintiff kicked Masiel's leg, which caused Masiel to back out of the law library.

16 | Plaintiff turned to retrieve his books and other belongings which had fallen from the pillowcase.

17 | C/O Aguirre approached Plaintiff, and Masiel re-entered the law library with his pepper spray in

18 | hand, shouted "Grab that fucking nigger and hold him," and started spraying Plaintiff.  Plaintiff

19 | started to donkey-kick Masiel to stop Masiel from hitting him in the back of the head with the

20 | pepper-spray can.  C/O Aguirre yelled that Masiel had sprayed him (Aguirre) in the face, and

21 | Plaintiff was slammed to the concrete floor, where Aguirre sat on his upper back and shoulders while

22 | Masiel and C/O D. Sullivan kicked Plaintiff in the ribs and shouted out racial slurs.  Sgt. Baer told

23 | Masiel, Sullivan and Aguirre to drag Plaintiff outside, which they did while continuing to verbally

24 | abuse Plaintiff.

25 |       Ten to fifteen minutes later, Sgt. Baer told Masiel and Aguirre, "Get this black-ass piece of

26 | shit off the ground and take him to the building and put his ass in a holding cell."  Masiel and

27 | Aguirre snatched Plaintiff up off the ground in a very violent manner, re-injuring Plaintiff's

28 | surgically-repaired neck, and escorted him across the grass to his assigned housing unit, continuing

1  to make racial slurs and threats which were overheard by other inmates.  As he was escorted into the

2  housing unit dayroom, Plaintiff told Masiel and Aguirre in a loud voice that they had injured his ribs

3  and his surgically-repaired neck.  Masiel responded, "Shut the fuck up, nigger, you're lucky we

4  didn't kill your black ass for snitching on the Sharks, you fucking rotten piece of shit."

5  C/O Robles electronically opened the shower door, and Masiel guided Plaintiff into the

6  shower.  At first the water was cold, and then it suddenly turned hot.  When Plaintiff attempted to

7  step out of the hot water, Masiel grabbed his arm and held him so he couldn't move.  Plaintiff yelled

8  loudly, "Why are you holding me under hot water!" expecting Robles to turn off the water or Aguirre

9  to intervene, but Masiel said, "Shut your fucking mouth, nigger, and just sue me.  I don't give a shit."

10  About twenty seconds later, Plaintiff was removed from the shower and aggressively escorted to a

11  holding cell.  Plaintiff told Sgt. Baer, C/O Jung-Hernandez, C/O Melo, and a nurse that Masiel had

12  held him for twenty seconds under hot water, and that Plaintiff's penis, testicles and anus were

13  burning from the pepper spray.  He asked them to allow him to take a cold shower to decontaminate.

14  They laughed at him and refused to allow him to decontaminate.

15  At approximately 11:45 a.m., C/O Adame and C/O Doe 1 arrived, and Plaintiff explained the

16  morning events to them, but they said they didn't care and collected Plaintiff's tennis shoes and took

17  photos to use as evidence in court against him.  Plaintiff told them he would file a complaint against

18  them for deliberate indifference, and C/O Adame told Plaintiff he would have to exhaust his

19  administrative remedies first, and his chances of that were slim-to-none.  Adame and Doe 1 laughed

20  at Plaintiff and left.

21  At approximately noon, Plaintiff explained the morning events to LVN Price and asked her

22  to tell custody staff to put him back in the shower so he could properly wash off the pepper spray,

23  and to have him escorted to the doctor for the injuries to his ribs and neck.  She refused.  Then she

24  filed a false medical report stating that Plaintiff had no injuries and that he was decontaminated.

25  When the Third Watch came to work, Plaintiff's skin was still burning from the pepper spray.

26  Plaintiff asked Does 2, 3, and 4 to put him in the shower and notify the LVN so he could receive

27  medical treatment, but they refused.  Plaintiff asked to see the Sergeant, and Sgt. Boyer came and

28  asked him what happened.  Plaintiff explained, and Sgt. Boyer told Does 2, 3, and 4 to put Plaintiff

in the shower for fifteen to twenty minutes so he could properly decontaminate. Sgt. Boyer left, and Does 2, 3, and 4 escorted Plaintiff to his cell and forced him to wait until 6:30 p.m. for a shower. After three minutes in the shower, C/O J. M. Velasco turned off the water and told Plaintiff his time was up. Because Plaintiff did not have enough time to decontaminate, his entire body was now burning from the pepper spray dripping from his hair. Fifteen to twenty minutes later, Does 2 and 3 escorted Plaintiff to his cell. Plaintiff told them told them the water was turned off after three minutes and his entire body was burning, and they replied, "So, what do you want us to do about it?" and started laughing. Plaintiff asked them to notify the Sergeant, but they refused, told him to file a request for an interview, and left, laughing.

At 8:00 p.m., LVN Valencia brought Plaintiff pain medication for his neck. Plaintiff asked Valencia to complete a medical report of his injuries, but she refused because the injury had occurred during Second Watch. She also refused Plaintiff's request to ask custody staff to return him to the shower.

On September 15, 2007, during breakfast distribution, C/O Masiel assaulted Plaintiff's cell mate by slamming the trays into his hand. When Plaintiff asked Masiel why he assaulted the cell mate, Masiel loudly responded, "Because he's just like you, just a dumb-ass nigger."

On September 16, 2007, at approximately 8:00 a.m., Sgt. J. M. Martinez came to Plaintiff's cell and called him names, telling Plaintiff he had made a big mistake by assaulting a Shark, and that he was going to initiate a chrono to place Plaintiff's "black ass" in leg-iron restraints whenever he left his cell. Plaintiff told Martinez that as a Sergeant, he did not have the authority to restrict Plaintiff. Martinez said he didn't care about the SHU operational procedures, and he would be placing Plaintiff in leg-iron restraints for ninety days. Plaintiff wrote a letter complaining to CDCR Secretary James Tilton about Defendants' conduct, but Tilton did not respond.

On the morning of September 18, 2007, Masiel distributed breakfast trays and sack lunches to Plaintiff and his cell mate. One of the sack lunches was missing the bag of Nacho Cheese Doritos. Plaintiff told Masiel about the Doritos, but he ignored Plaintiff and continued passing out trays. When Masiel returned to pick up the trays, Plaintiff again told him about the missing Doritos.

///

1   Masiel responded loudly, "It looks like only one of you niggers will be eating Nacho Cheese Doritos

2   today, unless one of you has the heart to take the bag from the other one."

3         At approximately 8:30 a.m., during morning yard release, C/O Dowdy and defendant Masiel

4   approached Plaintiff's cell and told Plaintiff if he wanted to go out on the yard, he would have to go

5   to the concrete yard, because he had assaulted Masiel.  Plaintiff denied assaulting Masiel and told

6   Dowdy that Plaintiff was the one being threatened.  Dowdy started laughing and told Plaintiff that

7   he had the rest of his life in prison to try and prove any of that.  Plaintiff was placed in waist chains

8   and leg irons in preparation for going to the exercise cages.  Masiel applied the leg irons so tight that

9   Plaintiff screamed out.  Masiel told Plaintiff to get up and start walking.  Plaintiff told him the leg

10  irons were too tight, and Masiel told Plaintiff to shut up, quit acting like a bitch, and walk faster, or

11  he would get his ass slammed for resisting.  When they arrived at the exercise cage, Plaintiff showed

12  Sgt. Martinez that his ankles were swollen and bleeding from deep cuts caused by the leg irons.

13  Martinez said, "That's what happens when you fuck with the Sharks at Corcoran," and told Plaintiff

14  to get used to wearing tight leg irons.  Then Martinez started laughing as he walked to the next cage.

15        At approximately 11:15 a.m., defendants Mendoza and Melo came to Plaintiff's exercise

16  cage and asked if he wanted to walk over and stand in the Nurse's Line to be seen by a nurse.

17  Plaintiff told Mendoza and Melo that his ankles and feet were swollen and numb from the too-tight

18  leg irons, and he needed shoes and a jumpsuit because these items had been taken from him.

19  Mendoza told Plaintiff they were not going to loosen the leg restraints or provide him with a

20  jumpsuit and shoes, because "that's the price you pay when you fuck with the Sharks."  Mendoza

21  told Plaintiff the only way to get shoes and a jumpsuit was from C/O Masiel or C/O Aguirre.

22  Mendoza removed Plaintiff from the cage and began escorting him the long way to the clinic,

23  causing Plaintiff to suffer excruciating pain from the tight leg irons.  Because Plaintiff walked

24  slowly, Mendoza threatened to take him back to his assigned cell and file a false report against him.

25  Defendant Melo told Plaintiff that leg iron restraints weren't a problem for his ancestors, so he

26  shouldn't be complaining, and Mendoza started laughing.  Plaintiff then called Melo a racist bitch

27  and told her he would file a complaint against her for racial animus.  Melo said she would like to see

28  how far Plaintiff's staff complaint would go, since all of the appeals coordinators are Sharks too.

1  While being escorted, Plaintiff encountered Captain B. Davis and asked him to instruct Mendoza and
2  Melo to loosen up the leg irons and get him some shoes and a jumpsuit.  Davis told Plaintiff to
3  exercise his appeal rights, then left.  Mendoza told Plaintiff that Davis was also a Shark, then started
4  laughing.

5      At the clinic, Plaintiff saw RN Garnett and told Garnett that officers had slammed him on
6  the ground, kicked him in the ribs, re-injured his neck, and applied the leg irons too tight.  Plaintiff's
7  ankles were still swollen and bleeding.  Garnett told Plaintiff that correctional officers don't assault
8  inmates at Corcoran.  Garnett examined Plaintiff and claimed she did not see any bruises, telling
9  Melo and Mendoza, "I don't see anything.  He's faking it, so I'll have him put on Doctor's Line for
10 within fourteen working days," and then they all laughed out loud.  Plaintiff filed a staff complaint
11 and sent a letter to Warden Adams.

12     On September 19, 2007, Plaintiff asked Chief Deputy Warden Maurice Junious to ask his
13 subordinates to get Plaintiff shoes and a jumpsuit, to write up an excessive force report for Plaintiff,
14 and to move Plaintiff and his cell mate out of 4A-2R.  Junious said he would take care of it, but he
15 did nothing.

16     On September 20, 2007, Plaintiff encountered Captain B. Davis and informed him he still
17 did not have shoes and was wearing leg irons, and that Plaintiff was suffering pain and humiliation.
18  Davis told Plaintiff he did not know that his subordinate staff was treating Plaintiff in that manner,
19 and he would instruct them to remove the leg irons and provide him with shoes.  Davis entered
20 Martinez's office, then returned and told Plaintiff he had instructed Martinez to provide Plaintiff
21 with shoes, and to remove Plaintiff's leg irons while Plaintiff was in the exercise cage.  However,
22 Martinez did nothing.

23     On September 25, 2007, Plaintiff submitted a complaint and letter to Appeals Coordinator
24 Lesniak, but Lesniak intentionally lost or destroyed the complaint.

25     On September 26, 2007, Plaintiff received a false 115 report written by C/O Masiel who was
26 attempting to cover up his unlawful actions.

27 ///
28 ///

On October 2, 2007, Plaintiff sent a staff complaint to Appeals Coordinator Jennifer Jones, complaining about the recent events. However, Jones held the complaint until January 7, 2008, when she screened it out without an explanation.

On October 18, 2007, Plaintiff sent a staff complaint to Associate Warden Raul Lopez, informing him of the recent events. However, Lopez intentionally lost or destroyed the complaint.

Plaintiff alleges that all of the defendants retaliated against him for filing staff complaints and lawsuits against prison officials. Plaintiff also alleges that defendants Tilton, Adams, Junious, Lopez and Davis failed to adequately train and supervise their employees, failing to protect Plaintiff and causing violation of Plaintiff's constitutional rights, resulting in physical injury, mental distress, humiliation and fear.

## IV.   PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "Section 1983 . . .  creates a cause of action for violations of the federal Constitution and laws." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted).  "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

### A.   Supervisory Liability/Personal Participation

Defendants names defendants who hold supervisory positions in the CDCR and/or at ASP. To the extent that Plaintiff seeks to hold any of the Defendants liable in their supervisory capacity on the theory of respondeat superior, Plaintiff is unable to do so.  Under section 1983, Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) (emphasis added).  Plaintiff must demonstrate that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights.  Iqbal, 129 S.Ct. at 1948-49.  Liability may not be imposed on supervisory personnel under section 1983

on the theory of <u>respondeat superior</u>, as each defendant is only liable for his or her own misconduct. <u>Id.</u>; <u>Ewing v. City of Stockton</u>, 588 F.3d 1218, 1235 (9th Cir. 2009). A supervisor may be held liable only if he or she "participated in or directed the violations, or knew of the violations and failed to act to prevent them." <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989); <u>accord</u> <u>Starr v. Baca</u>, No. 09-55233, 2011 WL 477094, at *4-5 (9th Cir. Feb. 11, 2011); <u>Corales v. Bennett</u>, 567 F.3d 554, 570 (9th Cir. 2009); <u>Preschooler II v. Clark County School Board of Trustees</u>, 479 F.3d 1175, 1182 (9th Cir. 2007); <u>Harris v. Roderick</u>, 126 F.3d 1189, 1204 (9th Cir. 1997). Therefore, to the extent that Plaintiff seeks to impose liability upon any of the defendants in their supervisory capacity, Plaintiff fails to state a claim.

### B.    <u>Eighth Amendment Claims</u>

#### 1.    <u>Medical Care</u>

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 106, 97 S.Ct. 295 (1976)). The two part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." <u>Jett</u>, 439 F.3d at 1096 (quoting <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir. 1992), <u>overruled</u> <u>on</u> <u>other</u> <u>grounds</u>, <u>WMX Techs., Inc. v. Miller</u>, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." <u>Id.</u> (citing <u>McGuckin</u>, 974 F.2d at 1060). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." <u>Id.</u> (citing <u>McGuckin</u> at 1060 (internal quotations omitted)). Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. <u>McGuckin</u> at 1060 (citing <u>Shapley v. Nevada Bd. of State Prison Comm'rs</u>, 766 F.2d 404, 407 (9th Cir. 1985)).

9

The Court finds that Plaintiff states a cognizable claim for inadequate medical care under the Eighth Amendment against defendants Sergeant Baer, C/O Jung-Hernandez, C/O Melo, C/O Adame, Does 1-4, and LVN Price.  However, Plaintiff fails to state a cognizable Eighth Amendment medical care claim against any of the other defendants.

### 2.   Failure to Protect

Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety.  Farmer, 511 U.S. at 832; Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982).   Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm."  Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).  Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it.  Id. at 837-45.

The Court finds that Plaintiff states a cognizable claim for failure to protect him under the Eighth Amendment against defendants Sergeant Baer, C/O Melo, Mendoza, Sergeant J. M. Martinez, and Captain Davis.  However Plaintiff fails to state a cognizable claim for failure to protect him against any of the other defendants.

### 3.   Excessive Force

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ."  Hudson, 503 U.S. at 8.  "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency."  Id. (internal quotation marks and citations omitted).  The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident.  Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines de minimis uses of force, not de minimis injuries)).  However, not "every malevolent touch by a prison guard gives rise to a federal cause of action."  Id. at 9.  "The Eighth Amendment's

prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

The Court finds that Plaintiff states cognizable claims for excessive force under the Eighth Amendment against defendants C/O J. Masiel, C/O A. Aguirre, and C/O D. Sullivan.  However, Plaintiff fails to state a cognizable excessive force claim against any of the other defendants.

### C.   Retaliation

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

Plaintiff makes a vague allegation that all of the defendants "retaliated against me for filing CDCR 602 staff complaints within the administration of the prison system; and, for exercising my First Amendment rights to the United States Constitution to file and maintain lawsuits against prison officials."  First Amd Cmpl at ¶¶119-123.  This allegation is insufficient to state a claim for retaliation.  To state a viable claim for relief, Plaintiff must set forth sufficient factual allegations sufficient to state a plausible claim for relief. Iqbal, 129 S.Ct. at 1949-50; Moss, 572 F.3d at 969. Therefore, Plaintiff fails to state a cognizable claim for retaliation.

### D.   **Verbal Harassment/Racial Slurs**

Plaintiff alleges that some of the defendants verbally harassed him, made racial slurs, and threatened him.  Mere verbal harassment or abuse, including the use of racial epithets, does not violate the Constitution and, thus, does not give rise to a claim for relief under 42 U.S.C. § 1983. Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987).  Also, threats do not rise to the level of a constitutional violation.  Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987).  Therefore, Plaintiff fails to state a cognizable claim against any of the defendants for racial slurs, verbal harassment, or threats.

### E.   **Inmate Appeals Process**

Plaintiff alleges that defendants improperly processed or obstructed his inmate appeals. Defendants' actions in responding to Plaintiff's appeals, alone, cannot give rise to any claims for relief under section 1983 for violation of due process.  "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (citing Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).  "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986).  Actions in reviewing a prisoner's administrative appeal cannot serve as the basis for liability under a section 1983 action. Buckley, 997 F.2d at 495.  Therefore, Plaintiff fails to state a claim for the improper processing of his inmate appeals.

### F.   **Equal Protection – Racial Discrimination**

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439, 105 S.Ct. 3249 (1985).  An equal protection claim may be established by showing that the defendant intentionally discriminated against the plaintiff based on the plaintiff's membership in a protected class, Serrano v. Francis, 345

F.3d 1071, 1082 (9th Cir. 2003), <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 686 (9th Cir.2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000); <u>Lazy Y Ranch Ltd. v. Behrens</u>, 546 F.3d 580, 592 (9th Cir. 2008); <u>North Pacifica LLC v. City of Pacifica</u>, 526 F.3d 478, 486 (9th Cir. 2008). To the extent that Plaintiff claims defendants discriminated against him because of his race, Plaintiff fails to state a claim. Plaintiff has not alleged any facts demonstrating that he was intentionally discriminated against on the basis of his membership in a protected class, or that he was intentionally treated differently than other similarly situated inmates without a rational relationship to a legitimate state purpose. Therefore, Plaintiff fails to state a claim for relief for violation of his right to equal protection.

### G.   State Law Claims

Plaintiff alleges that defendants CDCR Secretary James Tilton, Warden Derral Adams, Chief Deputy Warden Junious, Associate Warden Lopez and Captain Davis inadequately trained, managed and supervised their employees, and that defendants intentionally inflicted emotional distress upon him. Plaintiff is informed that violation of state tort law is not sufficient to state a claim for relief under § 1983. To state a claim under § 1983, there must be a deprivation of federal constitutional or statutory rights. See <u>Paul v. Davis</u>, 424 U.S. 693 (1976). Although the court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law. See 28 U.S.C. § 1367.

### H.   Doe Defendants

Plaintiff names Doe defendants in this action. "As a general rule, the use of 'John Doe' to identify a defendant is not favored." <u>Gillespie v. Civiletti</u>, 629 F.2d 637, 642 (9th Cir. 1980). Plaintiff is advised that John Doe or Jane Doe defendants cannot be served by the United States Marshal until Plaintiff has identified them as actual individuals and amended his complaint to substitute names for John Doe or Jane Doe. For service to be successful, the Marshal must be able to identify and locate defendants.

///

///

## I.   Claims for Equitable Relief and Attorney Fees

In addition to money damages, Plaintiff seeks injunctive relief, declaratory relief, attorney's fees, and costs of suit.  Any award of equitable relief is governed by the Prison Litigation Reform Act, which provides in relevant part, "Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs.  The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right."  18 U.S.C. § 3626(a)(1)(A).  Based on the nature of the claims at issue in this action, which involve past conduct, Plaintiff is not entitled to injunctive relief and is therefore confined to seeking money damages for the violations of his federal rights.

With regard to declaratory relief, "[a] declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." Eccles v. Peoples Bank of Lakewood Village, 333 U.S. 426, 431 (1948).  "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties."  United States v. Washington, 759 F.2d 1353, 1357 (9th Cir. 1985).  In the event that this action reaches trial and the jury returns a verdict in favor of Plaintiff, that verdict will be a finding that Plaintiff's constitutional rights were violated.  A declaration that defendant violated Plaintiff's rights is unnecessary.

With regard to attorney's fees, "In any action or proceeding to enforce a provision of section[] 1983 . . . , the court, in its discretion, may allow the prevailing party . . . reasonable attorney's fees . . . . "  42 U.S.C. § 1988(b).  Plaintiff's contention that he is entitled to attorney's fees if he prevails is without merit.  Plaintiff is representing himself in this action.  Because Plaintiff is not represented by an attorney, he is not entitled to recover attorney's fees if he prevails.  Gonzales v. Kangas, 814 F.2d 1411, 1412 (9th Cir. 1987).

///

///

1   **V.      CONCLUSION AND RECOMMENDATIONS**

2          For the reasons set forth above, the Court finds that Plaintiff states cognizable Eighth

3   Amendment claims against defendants Sergeant Baer, C/O Jung-Hernandez, C/O Melo, C/O Adame,

4   Does 1-4, and LVN Price for inadequate medical care; against defendants Sergeant Baer, C/O Melo,

5   Mendoza, Sergeant J. M. Martinez, and Captain Davis for failure to protect Plaintiff; and against

6   C/O J. Masiel  C/O A. Aguirre, and C/O D. Sullivan for excessive force.  However, the Court finds

7   that Plaintiff fails to state any other claims upon which relief may be granted under § 1983.   The

8   Court also finds that this action is a damages only action.  The Court previously granted Plaintiff an

9   opportunity to amend the complaint, with guidance by the Court.  Based on the facts set forth in the

10  First Amended Complaint, the Court finds that further leave to amend is not warranted.  28 U.S.C.

11  § 1915(e)(2)(B)(ii);  Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

12         Accordingly, **IT IS HEREBY RECOMMENDED** that:

13         1.      This action proceed with the First Amended Complaint filed on March 16, 2010, on

14                 the Eighth Amendment claims found cognizable by the Court against defendants

15                 Sergeant Baer, C/O Jung-Hernandez, C/O Melo, C/O Adame, Does 1-4, and LVN

16                 Price for inadequate medical care; against defendants Sergeant Baer, C/O Melo,

17                 Mendoza, Sergeant J. M. Martinez, and Captain Davis for failure to protect Plaintiff;

18                 and against C/O J. Masiel  C/O A. Aguirre, and C/O D. Sullivan for excessive force;

19         2.      This action proceed for money damages only as relief;

20         3.      All remaining claims and defendants be dismissed based on Plaintiff's failure to state

21                 a claim upon which relief may be granted under § 1983;

22         4.      Plaintiff's claims for supervisory liability, verbal harassment, racial slurs, retaliation,

23                 inadequate inmate appeals process, and equal protection be dismissed from this

24                 action based on Plaintiff's failure to state a claim upon which relief may be granted

25                 under § 1983;

26         5.      Defendants Tilton, Velasco, Flores, Garnett, Lopez, Junious, Adams, Jones, Lesniak,

27                 and Robles be dismissed from this action based on Plaintiff's failure to state any

28                 claims upon which relief may be granted against them under § 1983; and

1      6.     This action be referred back to the Magistrate Judge for further proceedings,

2             including initiation of service.

3      These Findings and Recommendations will be submitted to the United States District Judge

4 assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30)**

5 **days** after being served with these Findings and Recommendations, Plaintiff may file written

6 objections with the Court.  The document should be captioned "Objections to Magistrate Judge's

7 Findings and Recommendations."  Plaintiff is advised that failure to file objections within the

8 specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d

9 1153 (9th Cir. 1991).

10

11     IT IS SO ORDERED.

12     **Dated:   April 19, 2011**          _/s/_ **Gary S. Austin**
                                            UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28